## ESSMAN v. HOOD et al.
### No. 3295—550.

District Court, N. D. Texas, Dallas Division.
Dec. 23, 1930.

Harris & Martin, of Wichita Falls, Tex., William McCraw, Tom C. Clark, Shelby S. Cox, James J. Collins, and H. P. Kucera, all of Dallas, Tex., and Brin & Cate, of Terrell, Tex.; for the motion.

Coffman & Coffman, of Dallas, Tex., opposed.

ATWELL, District Judge.

The complainant's bill for an injunction against forty-one sheriffs and chiefs of police, as state officials of various counties and cities, including Dallas, Fort Worth, Ama-

rillo, Wichita Falls, Corsicana, Greenville, McKinney, Sherman, Cleburne, Eastland, Vernon, Waxahachie, and others, recites:

That he resides in Missouri and is engaged in the business of owning and operating and leasing "an automatic confection and vending machine," which machine, upon the deposit of a five-cent coin, automatically produces for the depositor a uniform package of mints. That the sheriffs of the various counties mentioned and the police of the various cities mentioned are charged with the enforcement of the criminal law of the state of Texas. That the Mills Novelty Company manufactures more than $2,750,000 worth of mints per year. That the vending of such mints is assisted by the machine, which consists of a metal box, attractively ornamented, in which are placed cylindrical packages of mints so that one package is delivered to the purchaser each time a nickel is deposited in the slot.

That at the top of such box, and behind a glass window, is an attractive advertising feature reproducing the various steps in a baseball game. That when the nickel is deposited for the mints the position of the various colored figures is changed, and there drops, for the convenience of the customer, from two to twenty metal tokens, which may be used in carrying forward the remainder of the game. These tokens are so stamped as to assure the customer that they are not good for any sort of merchandise, and that they are the property of the machine owner. The permanent printed instructions upon the box inform the customer of the use that he may make of these tokens in developing the game.

That the mechanism is attractive to the people, and that it serves as an advertisement for the sale of the mints. That it is in no sense a gambling device.

That the plaintiff is the owner of more than an hundred of these machines, and "desires to, and has prepared and made partial arrangements to install and intends to install in the cities of Fort Worth, Abilene, Amarillo, Burkburnett, Childress, Cisco, Corsicana, Dallas, Gainesville, Greenville, Hillsboro, McKinney, Mineral Wells, Ranger, Sherman, Terrell, Vernon, Waxahachie, Weatherford, Wichita Falls, Texas, two hundred or more, by leasing them for stipulated rentals to persons doing business in said cities, and to furnish said lessees, for agreed commissions on sales thereof, mints to be vended by the same." That he has installed and leased

many of the machines "in the northern district of Texas, and that the defendants know, or should know, that he proposes and intends to lease and install said machines throughout the northern district. That the defendants, or some of the defendants, acting through their subordinate officers in such cities, * * * have forbidden operation thereof on the ground that said machines are prohibited by the laws of Texas, and have threatened to and will, unless restrained, continue to seize and destroy said machines when same are placed, installed and operated. That they have arrested, or caused to be arrested, and have threatened to arrest, or cause to be arrested, the plaintiff as owner of said machines, and all persons found by them to be leasing and operating said machines, and to arrest or cause the arrest of all persons having same in their control or possession, or permitting the same to be operated upon their premises."

That such threats by the defendants have intimidated many firms and persons with whom the plaintiff is attempting to negotiate leases for the machines in the cities mentioned, and have intimidated the owners and lessees of stores where the machines are to be installed, so that prospective customers refuse to consummate leases with the plaintiff, or to install or permit the operation of the same. That great and irreparable loss will result to his business in the sum of $5,000. "That the plaintiff will be thereby denied the right to make contracts for the rental and use of his said machines in said cities and counties and to conduct his business therein, and in the event of seizures, forfeiture, or confiscation, plaintiff's property and property rights will be invaded and plaintiff will suffer irreparable injury."

It is further alleged that, if the defendants are not enjoined, his lessees and the operators of the machines will be subjected to repeated arrests by the defendants for such installation and operation. That the machines are not contrivances used in betting or gambling, and are not such machines as are declared illegal by the statutes of Texas.

No preliminary restraining order has been sought. The defendants move to dismiss on the ground that there is an improper joinder of parties defendant; that there is a complete legal remedy; that the court has no jurisdiction; that there is no specific allegation of any act, or threatened act, by any particular defendant; that the property for which the protection of the court is sought is not within the district.

■ The national court affords the same remedies to the nonresident that the local citizen has in the state courts. So the suggestion that the court, because foreign to the local statutes, acts without the scope of its power, is not well taken.

■ The chancellor, sitting in an united court of law and equity in Texas, would have the authority to enjoin local peace officers from enforcing an illegal statute, or from illegally and unjustly harassing a citizen by unfounded arrests, or from the destruction of his property. This power is available, also, in the national court, when the requisites of jurisdiction are present. Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Fenner v. Boykin (D. C.) 3 F.(2d) 674. Nor is such a suit in this court a suit against the state, within the meaning of the Eleventh Amendment. Truax v. Raich, supra; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

■ A court of equity will enjoin a prosecution for crime when it is necessary to protect property rights, and a bill will be entertained for such relief against repeated seizures by police of slot machines, after the state courts have held that the machines are not in violation of any state statute. Ashcraft v. Healey (C. C. A.) 23 F.(2d) 189. This is in thorough harmony with the statement that the national court has no jurisdiction, in a civil cause, to test whether an apparatus is a gambling device. Tillitson v. Milmore (D. C.) 30 F.(2d) 559. See, also, Ross v. Goodwin (D. C.) 40 F.(2d) 532; Id. (D. C.) 40 F.(2d) 535; Gardner v. Daugherty (D. C.) 10 F.(2d) 373.

So long as there is an adequate remedy at law, namely, a constitutional method for the determination of the quality of the apparatus under scrutiny, the chancellor would not act; but, when that method has been followed, and it has been found that the machine is not in violation of the local law, the repeated seizures and destructions of the same, and the arrest of the persons operating them, would be such a disregard of the rights of property and person as would justify the staying hand of equity.

■ There is no allegation in the bill of any action by the state courts in accordance with articles 633–642, Penal Code of Texas, for the determination of the lawfulness or unlawfulness of the alleged gambling machine. Those articles provide that paraphernalia seized by state officers shall be returned to the parties from whom the same were taken, if upon trial it is determined that their possession and operation is not a violation of the law. This court, in a foreign jurisdiction, will not try out, under the terms of a state statute, the legality or illegality of a proffered slot machine. That must be accomplished in the jurisdiction from which came, under its police power, the laws against the operation of such device. If those courts determine that their operation is legal, and then a nonresident comes into this court and alleges a disregard of such decision and the destruction of his property and the harassing of his person, this court would act. Until that is alleged no equity is shown.

■■ Again, this motion to dismiss must be sustained because there is no community among the forty-one defendants. Neither is there more than $3,000 involved.

The jurisdiction of the court is sought because of diversity of citizenship. The complainant does not assert any controversy between him and either one of the defendants of sufficient dignity in amount to entitle him to come here. Against forty-one officers he proceeds and asserts that the amount involved is more than $5,000. What part of that is against either one of the officers he does not disclose. He says, "the defendants, or some of them."

■ Even though claims depend upon a common origin, if they be separate and distinct, their respective amounts furnish the jurisdictional test, and not their aggregate amount. This is made very plain in the case of W. O. W. v. O'Neill et al., 266 U. S. 292, 45 S. Ct. 49, 69 L. Ed. 293. In that case jurisdiction was maintained because there was an allegation of conspiracy among the defendants—a joint action in accordance with a common mind. That is totally absent here.

No single defendant can be brought by the plaintiff into a national court—taken away from his local state court—unless there is more than $3,000 involved. To join a great number of defendants in a single suit places a liability, upon some of them, of a greater hazard than the law permits. Each is entitled to have his own suit litigated. Neither may have his controversy tinged or complexioned by a dispute that may exist between his neighbor and the complainant.

The defendants reside in five different divisions of the district, and are not tied together by any allegation.

Because no equity is shown, and because the jurisdictional amount is absent, and because there is a misjoinder of defendants, the motion must be sustained.