CALLISON v. WELCH, Chief of Police, et al.

No. 597.

District Court, N. D. Texas, Dallas Division.
Dec. 8, 1941.

J. P. Miller, of Dallas, Tex., for plaintiff.

H. Pat Edwards, of Dallas, Tex., for Sheriff Schmidt and another.

A. J. Thuss, of Dallas, Tex., for Chief of Police and another.

ATWELL, District Judge.

Plaintiff alleges that he is a citizen of Oklahoma. He complains of the Chief of Police of the city of Dallas, the District Attorney of Dallas County, the Sheriff of Dallas County, and "their subordinates, agents, servants and employees."

He claims that the amount involved is in excess of $3,000. That he is attempting to conduct the Callison Quiz Advertising Programs, "described in detail as a container filled with tickets and a card affixed thereto, * * *. The card attached as exhibit 'A' being an exact duplicate of the rules and style. * * * that the questions may be removed and replaced with new questions * * *. The entrance fee is five cents, for which the contestant receives one of the questions out of the jar. The award depends upon whether the contestant can answer the question correctly * * *. That the plaintiff's programs will be welcome, 'by the public of this modern day and age.' That it is in the same category as the programs now conducted on radio, through newspapers, and other public enterprises, and is educational, as well as advertising, and not subject to the control of selfish and injurious opinions. It is based upon intellectual attainment * * * and is a contest of skill. * * * It is a diversion and entertainment, and not in any concept a contest predominated by chance; skill at all times being the predominating factor. That it is his purpose to build up a medium for local, state and national advertising. That the tickets in the container are so manufactured that each combination repeats twelve times. That is to say, there are twelve of each and every ticket bearing the same number for the purpose of equal distribution. By using the series adopted, there could be one hundred and fifty-three different advertisements posted on the advertising board at one time, and each advertisement would bear a different number, and it is so arranged that each advertisement may distribute twelve awards to the public, and, therefore, the advertiser getting a definite distribution. * * * The combinations that do not carry advertising may be absorbed by the manufacturer, distributor, or keeper, as like space is absorbed in newspapers, magazines, and on radio stations. That the ticket directs the contestant to the question that he has the right to answer. * * * The drawing of the question receives no reward. The contestant pays the five cents and selects his question, which question is on the board before him."

He alleges that he has presented a container filled with tickets, with a card attached thereto, to defendant Chief of Police of the city of Dallas, to Dean Gauldin, the District Attorney of the county of Dallas, and to defendant R. A. Schmidt, the Sheriff of Dallas County, and was advised by the Chief of Police that if he placed them in operation they would be picked up

and secreted, and that "he would be put out of business." "That the program was a subterfuge." That the sheriff told him substantially the same thing. That the District Attorney informed him that he would file any charges against him that were preferred. That, notwithstanding such statements, the plaintiff advised the said officers that he would operate the said program in Dallas County.

That he did seek to operate the same, and that two of his programs were seized by the Chief of Police.

He makes the usual allegations as to the lack of an adequate legal remedy, and for customary legal steps in restraint.

The usual show cause order was issued by the court, returnable on December 8th, the bill having been presented on December 1st.

The defendants deny that the amount in controversy exceeds $3,000; neither admit nor deny the residence of the plaintiff in Oklahoma, but demand proof; deny that the paraphernalia declared upon by the plaintiff is entitled to the protection of a court of equity since the same constitutes a gambling device which is contrary to the penal laws of the state of Texas, and that both the keeper and exhibitor operate the same in violation of such laws.

The seizure of the two devices is admitted by the Chief of Police, and it is alleged that destruction proceedings, under the state statute, were to be filed in the defendant District Attorney's office, in which proceedings it would be determined, in accordance with the statutes, whether or not the device was lawful property, or a gambling device. That such proceedings were not proceeded with, because of the issuance of the show cause order in this case.

The motions to dismiss were held in abeyance until the court heard the testimony. The plaintiff fully explained his apparatus and plan at such hearing. Its exhibition seems to preclude any thoughtful observation other than that it is a chance.

One of the questions shown on the board is, "What two names does a young hog have?"

The number of questions in the jar is in excess of fifteen hundred.

The giving of a prize for the answering of a question depends upon the correctness of the answer. The grading of the questions results in a fairly substantial award to twelve of them; fairly substantial awards to ninety-six of them, and ten-cent awards to the remainder of the questions which are in the jar, provided the man who is the customer, and who pays his five cents, gets the correct answer. If he does not get the correct answer, he does not get anything. The correctness, of course, is dependent upon his learning, his knowledge, and his wisdom. That also may be said of any game of chance. If one is a learned gambler, he might throw dice better than one who is not a learned gambler. I mean, it is a chance whether he will draw, or whether he will not. All prize schemes are, to that extent, gambles. They are lotteries, or, chances.

Francis E. Williams has an interesting article in a current issue of the Lawyer, on "I. Q. Lottery Machines." In the article, the authorities are assembled very well. Among them are, National Conference v. Farley, 68 App.D.C. 319, 96 F.2d 861; Dillingham v. McLaughlin, 264 U.S. 370, 44 S.Ct. 362, 68 L.Ed. 742; State v. Globe Democrat Pub. Co., 341 Mo. 862, 110 S.W. 2d 705; People v. Lavin, 179 N.Y. 164, 71 N.E. 753, 66 L.R.A. 601, 1 Ann.Cas. 165; Central States Theatre Corp. v. Patz, D.C., 11 F.Supp. 566; Hudleson v. State, 94 Ind. 426, 48 Am.Rep. 171; Stevens v. Times-Star Co., 72 Ohio St. 112, 73 N.E. 1058, 106 Am.St.Rep. 586; Waite v. Press Pub. Ass'n, 6 Cir., 155 F. 58, 11 L.R.A.,N.S., 609, 12 Ann.Cas. 319.

There is some support for what is called the "pure chance" doctrine, which was headed by an English court, Caminada v. Hulton, 60 L.J.M.C. 116, and which had a slight following in this country. But it is thought that such a position is untenable and is repudiated by the weight of authorities, both here and in England.

The post office department, in an attempt to protect the United States mails from use by lottery scheme, has never departed from its position that prizes, or, awards, dependent upon chance, stamp the project as a lottery.

But this court is not bounden, in a case such as is presented, to definitely determine whether the plaintiff's program is a gambling scheme. In the absence of a determination that it is not, by the courts of the state, charged with the duty of passing upon acts, schemes, or, devices which are alleged to be in violation of the state gambling statute, this court will not make the investigation, nor will it place a restraining hand upon the officers of the state, or city,

until state courts have spoken. If those courts hold that it is a gambling device, then, of course, that would settle the matter. If they hold that it is not a gambling device, and if executive officers continue to molest the plaintiff after such a holding, then he would have a right to seek protection here.

This doctrine was developed by this court in Essman v. Hood et al., 45 F.2d 881, and need not be repeated.

■ The testimony indicates that a step for the determination of that particular question was about to be taken by the defendant Chief of Police when these proceedings were filed.

The plaintiff can appear there and assert his contention and have a full hearing, no doubt, which will establish to some extent, at any rate, whether his contention is correct that it is not a gamble. If he is cast in that direction, he may appeal.

Restraint is denied.